UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Sharmarke Y. Abdi, | | |
| | Plaintiff, | |
| | | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)** |
| vs. | | |
| Hennepin County, | | |
| | Defendant. | |
| | | Court File No. 0:23-cv-01275 (WMW/LIB) |

## INTRODUCTION

Defendant Hennepin County ("County") moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Pro se* Plaintiff Sharmarke Abdi ("Abdi") has and continues to work for Hennepin County as a Senior Social Worker since January 2014. Abdi filed this lawsuit under the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII") alleging that the County: (1) discriminatorily failed to provide reasonable workplace accommodations in violation of the ADA; (2) engaged in retaliation against (Abdi) for asserting his rights under the ADA; (3) engaged in discrimination based on national origin in violation of Title VII; and (4) engaged in racial discrimination in violation of Title VII. The County moves to dismiss Abdi's claims on the following grounds: (1) Abdi has failed

to exhaust his administrative remedies; and (2) he has not pled sufficient facts to state any claims upon which relief can be granted. The County moves to dismiss Abdi's claims in their entirety.[1]

## FACTS

### A. Introduction

Abdi alleges many facts that are not always clear or correct.[2] These alleged facts are divided into two parts: (1) events occurring before Abdi filed his Equal Employment Opportunity Commission ("EEOC") charge in August 2021; and (2) facts occurring after he filed his EEOC charge.

The EEOC charge attached to the Complaint shows that Abdi signed this charge on August 2, 2021. The charge also states that the applicable time period is 03-01-2020 to 07-30-2021. The charge does not indicate that it covers the time period after his filing of the charge, *nor* does it indicate that Abdi sought to amend his original charge to include events that occurred after his filing of his charge or after his promotion.

### B. Workplace Allegations of Events Occurring Before Charge was Filed.

According to the Complaint, Abdi began working for the County as a Senior Social Worker on January 27, 2014. Compl. ¶ 9. Abdi continues to be employed in that capacity. *Id*.

---

[1] In its Motion to Dismiss, the County also referenced Fed. R. Civ. P. 12(B)(1) which seeks to dismiss for lack of jurisdiction.  The County is no longer seeking to dismiss the Complaint on jurisdictional grounds.
[2] Although the County does not agree with the accuracy of all of the alleged facts in the Complaint, it accepts the Complaint's allegations solely for the purpose of this dismissal motion.

2

In November of 2020, Abdi submitted a request for a stand-up/adjustable height desk to conduct his duties remotely from home. *Id*. at ¶ 11. Abdi's request for the stand-up desk was denied on January 22, 2021. *Id*. at ¶ 12. Abdi does not allege how this denial of accommodation interfered with his ability to do his work. He also makes claims that he was treated badly by a white co-worker, but he makes no allegations showing her conduct was due to his race or national origin. *See id*. at ¶¶ 16-27.

In March of 2021, Abdi received an employee performance evaluation, which included comments about his interpersonal communication in the workplace. *Id*. at ¶ 21. Abdi was the subject of an employment investigation on April 1, 2021. *Id*. at ¶ 15, ¶ 22. Mr. Abdi acknowledges that the investigation resulted in "acquittal" and that he received only a "coaching." *Id*. at ¶ 25.

### C. Workplace Allegations of Events Occurring After Abdi filed his EEOC charge.

After filing his EEOC charge, Abdi claims he was promoted, and he went to a new department on October 11, 2021. *Id*. at ¶ 29. Abdi claims this position was a "promotion" but then, without explanation, complains that this promotion resulted in a $4,000.00 pay loss. *Id*. at ¶ 29. Abdi makes no claim that his transfer/promotion was involuntary or an act of retaliation. He was in a new department with new supervisors and managers.

The Complaint does not list any continuing adverse work consequences during the eight months' time period following his EEOC filing in August 2021. In April 2022, his *new* supervisor learned that Abdi used a wheelchair. His job required that he go to clients' homes which were not always wheelchair accessible. *See id*. at ¶¶ 32-43.

Abdi alleges that the County then acted in a retaliatory manner and investigated Abdi's job performance after Abdi requested to remain in his current position. *See id*. at ¶¶ 36-42. This request was denied because Abdi was not physically able to do all of the essential duties. Abdi alleges that not granting his request to stay in his current position was both a denial of accommodation and an act of retaliation. *See id*.

When managers learned that Abdi was not qualified for his current position, the County did not demote Abdi to his previous position. Instead, efforts were made to find him another senior social worker position that he could do with his mobility limitations. The County offered Abdi a transfer to a senior social worker position at the Sheriff's 911 center in Plymouth. *See id.* at ¶ 44. Abdi accepted the position. He has made no claim that this transfer resulted in a loss of pay nor does he claim the transfer was a demotion. *See id.* at ¶ 44.

Abdi claimed that this new worksite was not fully handicap accessible. The County's staff asked Abdi to identify what changes were necessary to make the Plymouth work site accessible to him. Because of the accessibility issues, he was allowed to work at other work sites, including his home, while accessibility changes were made at the 911 work site. *See id. at* ¶¶ 44-45. According to Abdi, Hennepin County spent approximately $90,000.00 to make the work site accessible to him. *Id. a*t ¶¶ 46.

After accepting the 911 position, Abdi claims he requested an accommodation to change his work shift and this request was denied. He also makes claims that both a white

woman social worker and a black woman social worker were allowed to work his preferred shift while he was denied a change in shifts. *See id.* at ¶¶ 47-53.

### D. Abdi's EEOC Discrimination Charge

On August 2, 2021, Abdi filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation under the ADA for failure to provide reasonable accommodations and subjecting him to different terms and conditions of employment, respectively. In addition, Abdi alleges race discrimination under Title VII. In making this charge, Abdi checked the boxes for discrimination based on race, retaliation and disability. Abdi did *not* check the box for national origin, nor did he provide any information in his written charge alleging facts that he suffered discrimination due to his "national origin." *See Compl*. Attachment 1-2. After an investigation, the EEOC issued Abdi a Determination and Notice of Rights, also known as a Right-to-Sue Letter, on February 10, 2023. *See Compl*. Attachment 1-2. This action then ensued.

## RULE 12(b)(6) DISMISSAL STANDARDS

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *See Peck v. Hoff*, 660 F.2d 371, 374 (8th Cir. 1981); *see also Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys. Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993) (stating rule 12(b)(6) motion allows "the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activity"). To survive a rule 12(b)(6) motion, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wartman v. United Food & Commercial Workers Local 653*, 871 F.3d 638, 640 (8th Cir. 2017) (quotation omitted). In examining a complaint, a court may ignore conclusory allegations or "threadbare recitals of the elements of a cause of action." *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." *Young v. City of St. Charles*, *Mo*., 244 F.3d 623, 627 (8th Cir. 2001).

Although courts liberally construe *pro se* complaints, *pro se* litigants are not excused from alleging sufficient facts to state a claim for relief. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). A court "is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009). As the Supreme Court has stressed, "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984).

A court should dismiss a complaint when, construing all facts in the light most favorable to the plaintiff, the plaintiff cannot prove any set of facts that support a legal claim. *K.T.*, 865 F.3d at 1057. Under the applicable standards of review, Abdi's Complaint should be dismissed.

**ARGUMENT**

I.  **Abdi's claim that the County failed to provide reasonable accommodations under the ADA should be dismissed because he fails to allege sufficient facts to establish his claim and he has not shown that he suffered an adverse action.**

Because Abdi's Complaint does not allege facts to support a failure to accommodate claim, the claim must be dismissed. To establish a failure to accommodate claim, the plaintiff must make a facial showing that he has both an ADA disability and has suffered an adverse employment action. *See Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008). An employee must show that a desired accommodation is "reasonable on its face." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 456 (8th Cir. 2022).

"Where the employee requests accommodation, the employer must engage in an informal, interactive process, with the employee to identify the limitations caused by the disability and the potential reasonable accommodations to overcome those limitations." *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 862 (8th Cir. 2006) (quotation omitted). An employer is not required to provide the accommodation requested or preferred by the employee. *See Minnihan v. Mediacom Comm'ns Corp.*, 779 F.3d 803, 813 (8th Cir. 2015).

Here, Abdi's claims fail for multiple reasons. First, Abdi has made no showing that he suffered an adverse employment action during the relevant time period of the charge. Abdi was denied his initial request for a step-up desk, but he makes no claim that the delay in getting this desk interfered with his ability to do the essential functions of his

job. That is a necessary threshold element for a failure to accommodate claim, and his claims should be dismissed for that reason alone. Courts define an "adverse employment action" to be one that involves a "tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000). The Eighth Circuit has held that a number of events qualify as adverse employment actions, including termination, reductions in benefits or pay, changes in title, or changes in employment that significantly affect an employer's future career prospects. *Id*. However, "minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not [qualify]." *Id*.

Abdi has made no showing that he experienced any significant harm to his employment with the County. In fact, his pleadings acknowledge the opposite – that he has been promoted. Compl. at ¶ 29. He points to other minor issues, such as being the subject of an employment investigation which he was later "coached" for, as well as some critical comments in his annual performance evaluation. However, these are minor inconveniences, and Abdi has made no showing that they have impacted his working conditions or future career prospects in any meaningful way. These alleged allegations – assuming they are true – do not support a viable retaliation claim because they did not result in any harm, let alone significant harm.

Second, while Abdi states that he requested a workplace accommodation for a "stand up desk to conduct his job duties remotely," he pleads no facts to support that the

8

requested accommodation was reasonable or how that accommodation would help him to successfully perform his job tasks. Abdi includes no facts about what occurred during the interactive process between him and the County when he made this request. Abdi also admits that he was accommodated when he was reassigned to another position for which he was qualified. Compl. ¶ 29. While this may not have been the accommodation preferred by Abdi, he was ultimately accommodated.

**II.   Abdi's claims regarding events occurring months after he filed his EEOC charge exceeds the ambit of the charge and is barred for failure to exhaust administrative remedies.**

Abdi's ADA retaliation claim must be dismissed because Abdi failed to exhaust his administrative remedies. Abdi's Complaint submitted May 5, 2023, references allegations beyond the scope of the underlying EEOC charge. Specifically, the complaint contains discrete allegations that occurred after August 2, 2021, the date he filed his EEOC complaint. However, no amended EEOC charge was filed.

Before bringing his ADA and other Title VII claims in federal court, a plaintiff must first exhaust their administrative remedies by filing a timely discrimination charge with the EEOC. *See Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 608 (8th Cir. 2018). The exhaustion requirement allows the EEOC to investigate claims and promote conciliation and voluntary compliance by parties. *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 223 (8th Cir. 1994) ("Allowing a [lawsuit] complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the

9

EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge . . . .").

The only alleged discriminatory employment practices under the ADA that Abdi raises in the underlying EEOC charge are that he; (1) made an accommodation request for a stand-up desk that was initially denied; and (2) he was subjected to different terms and condition of employment when he was investigated and received negative comments in his performance evaluation. Abdi alleged that these circumstances prevented him from being promoted. But his Complaint shows that any comments about his communications skills did not prevent him from being promoted and he was promoted shortly after he filed his EEOC charge.

However, in this lawsuit he raised additional allegations regarding additional accommodations requests that were denied as well as his other Title VII claims.  These claims regarded events that occurred in 2022-23 and occurred more than eights months after Abdi filed his EEOC charge. These new allegations are not contained in the underlying EEOC charge and are "not reasonably related to underlying discrimination claims." *Russell v. TG Missouri Corp.*, 340 F.3d 735, 749 (8th Cir. 2003).  These ADA claims had no connection to the initial denial of his stand-up desk requests.  Instead, they concerned a matter that came up eight months after Abdi's filing of his EEOC charge. These ADA claims during the 2022-23 period had no connection to his desk claim.

Instead, these concerns arose from the fact that Abdi had been promoted to a job where his mobility limitations prevented him from performing essential functions of his

10

job. By not adding these new allegations in his original charge and by not filing a second EEOC charge related to these new allegations, Abdi failed to exhaust his administrative remedies for his 2022-23 ADA and other Title VII claims.

All allegations regarding events occurring many months after Abdi filed his EEOC claim must be dismissed. These alleged violations of federal ADA law and Title VII were not included in the charge and there has been no showing that Abdi sought to expand the scope of his original charge to unrelated events that occurred after the charge was filed. The EEOC did not have the opportunity to investigate these allegations and the County has been deprived of timely notice of the charge. Consequently, Abdi did not exhaust his administrative remedies with the events occurring during the 2022-2023 time period and these claims should be dismissed.

**III.     Abdi's ADA retaliation claim fails because he does not allege an adverse employment action.**

To establish unlawful retaliation under the ADA, a plaintiff must show that: (1) he engaged in a statutorily protected activity: (2) the employer took an adverse action against him: and (3) there was a causal connection between the adverse action and the protected activity. *See Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir.1999). An adverse employment action is one that causes a material change in the terms or conditions of employment. *Brown v. Cox*, 286 F.3d 1040, 1045 (8th Cir. 2002). An "adverse" action must be one that creates a "tangible change in duties or working conditions that constitute a material disadvantage." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 972 (8th

Cir.1999) (quoting *Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir.1997).

Here, Abdi does not allege any tangible adverse employment action that creates a material disadvantage. Abdi was not terminated and remains fully employed with the County. Abdi's Complaint does state he suffered a $4,000 income loss in October of 2021. Compl. ¶ 29. However, as discussed above, this allegation is outside of the scope of the underlying EEOC charge and Abdi fails to explain how the County was responsible for him losing this income. Additionally, this allegation is inconsistent with Abdi's pleadings. Abdi asserts that he suffered a loss of income but then, in the same breath, he acknowledges that he received a promotion. Compl. ¶ 29.

Abdi's Complaint asserts that he received comments in his employee performance review about needing to improve communication and that he was also subject to an employment investigation in retaliation for asking for a workplace accommodation. Compl. ¶¶ 21–22. However, Abdi's pleadings are again inconsistent. Abdi acknowledges that the employment investigation resulted in an "acquittal" and a "coaching." Compl. ¶¶ 25, 29. First, coaching is not considered disciplinary action and therefore it cannot be considered an adverse employment action. Second, even if Mr. Abdi was given a performance evaluation with critical comments, it does not constitute an adverse employment action on its own. "An unfavorable evaluation is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Spears v. Mo. Dep't of Corr. & Human Res.*,

210 F3d 850, 854 (8th Cir. 2000). Abdi has made no showing that either the coaching or the critical comments he received in his performance evaluation have any causal nexus between his objection to his workplace accommodation denial and any detrimental impact on his employment with the County. Again, as previously noted Abdi admits that after these events occurred, he was promoted, and he chose to go to a new work area.

Abdi has not alleged any actionable adverse employment action. He also has not pled sufficient facts necessary to make a showing of a causal connection between any alleged protected activity and an actionable adverse action. Since he has not sufficiently pled the essential threshold elements of his claim, his claims should be dismissed.

## IV.  Abdi's national origin discrimination claim is barred for failure to exhaust administrative remedies.

In his Complaint, Abdi checked the box indicating that he believed the County discriminated against him based on his national origin. However, Abdi failed to exhaust the required prerequisite administrative remedies for allegations of national origin discrimination.

In Abdi's EEOC charge, he only checked race, retaliation, and disability boxes. Abdi also does not reference any facts in his charge to indicate that he is making a national origin charge. Consequently, the County did not receive proper notice of a national origin claim and the EEOC's investigation did not consider a national origin claim.

"An employee cannot bring a discrimination claim without first exhausting his or her administrative remedies." *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999). In

meeting this requirement, the "claimant is required to demonstrate good faith participation in the administrative process, which includes making specific charges and providing information necessary to the [EEOC] investigation." *Id*.

The first time Abdi raised any allegations of national origin discrimination are in this lawsuit. These claims are separate and distinct causes of action under Title VII that are beyond the scope of Abdi's EEOC charge. Simply because a plaintiff previously filed a timely EEOC charge does not give him license to add new claims to the lawsuit which were not contained in the EEOC charge and occurred eight months after the charge was filed. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994).

While courts may "liberally construe an administrative charge for exhaustion of remedies . . . there is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made." *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). Abdi failed to exhaust the administrative remedies with respect to his national origin claim. Therefore, any claims based on national origin should be dismissed.

**V.    Abdi's racial discrimination claim should be dismissed for failure to state a claim because his allegations are too conclusory, generalized, and lacking in specifics to state a claim under Title VII.**

To the extent that Abdi's Complaint can be read to assert a racial discrimination claim, he has not pled sufficient facts to support such a claim. A prima facie case of Title VII race discrimination requires Abdi to show that: "(1) he is a member of a protected class; (2) he was meeting the employer's legitimate job expectations; (3) he suffered an

adverse employment action; and (4) similarly situated employees outside the protected class were treated differently." *Singletary v. Missouri Dep't of Corr.*, 423 F.3d 886, 891 (8th Cir. 2005).

Abdi's Complaint is devoid of any facts that would support a showing that similarly situated employees outside the protected class were treated differently. Although Abdi alleges that other employees in general were treated more favorably than him, a showing of a prima facie case of discrimination under Title VII is much more demanding.

For example, Abdi's Complaint asserts the County allowed another black social worker to transfer to another vacant position and allowed that employee to work the morning shift. Compl. ¶¶ 50-51. Abdi further alleges that the County allowed other staff to transfer to different positions and departments and alleges that the County discriminated against him by allegedly treating him differently than other staff. *Id* at ¶ 52. These statements either do not relate to employees outside of Abdi's protected class or do not state enough facts with enough specificity to show that Abdi was subject to differential treatment based on race.

Abdi also states that the County's 911 dispatch team hired a white woman social worker into a morning shift. *Id*. at ¶ 49. While this assertion relates to an employee outside of Abdi's protected class, Abdi pleads no facts that would lead to an inference that he was indeed similarly situated to this employee or that the complained about action was due to racial bias.

Abdi also raises a situation where a white, female employee accused him of various things, including providing false information. Abdi states that the County failed to "recuse" him from this employee. These facts on their own are not sufficient to support a Title VII racial discrimination claim. Title VII is not a "general civility code for the American workplace." *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 953 (8th Cir. 2011).

The assertions raised in Abdi's Complaint do not relate to similarly situated employees *outside* Abdi's protected class. These allegations consist of unsupported conclusory statements that lack enough specificity to raise the plausibility of racial discrimination. Therefore, Abdi's claims of racial discrimination and retaliation must be dismissed.

## CONCLUSION

For the above-stated reasons set forth in this Memorandum, Abdi's Complaint should be dismissed with prejudice in its entirety.

MARY F. MORIARTY
Hennepin County Attorney

Dated: August 29, 2023            By: /s/ Beverly J. Wolfe
                                  BEVERLY J. WOLFE (# 0131751)
                                  Assistant County Attorney
                                  Attorney for Defendant
                                  2000A Government Center
                                  300 South Sixth Street
                                  Minneapolis, MN 55487
                                  Telephone: (612) 348-2240