**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

RECEIVED

SEP 19 2023

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | | |
|---|---|---|
| Sharmarke Y. Abdi, | | |
| | Plaintiff, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)(6)** |
| vs. | | |
| Hennepin County, | | |
| | Defendant. | Court File No. 0:23-cv-01275 (WMW/LIB) |

---

## INTRODUCTION

Pro se Plaintiff Sharmarke Abdi ("Mr. Abdi") moves to oppose Defendant Hennepin County's ("County") Motion to Dismiss, filed on August 14, 2023, against Abdi's Complaint under Fed. R. Civ. P. 12(b)(1)(6) for subject jurisdiction and failure to state a claim upon which relief can be granted.

In Defendant's memorandum of Law in Support of Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), filed on August 29, 2023, the County lists additional defenses such as failure to exhaust administrative remedies in which the County failed to state its Motion to Dismiss filed on August 14, 2023. In addition, its Motion to Dismiss, the County also referenced Fed. R. Civ. P. 12(b)(1) in which now, the County is no longer seeking to dismiss on Mr. Abdi's Complaint on subject jurisdictional grounds.

1

SCANNED
SEP 19 2023
U.S. DISTRICT COURT MPLS

The court must consider the Complaint in its entirety when evaluating a Motion to Dismiss for failure to state a claim. The County asserts only thirteen paragraphs in Mr. Abdi's Complaints *See Compl.* at ¶¶9-12. ¶21. ¶22. ¶25. ¶29. ¶49. ¶¶44-46. ¶52.  And the County wants the court to ignore the following the Complaint's forty-five paragraphs of facts: *See Compl.* at ¶8.  ¶¶13-20. ¶¶23-24, ¶¶26-28. ¶¶30-43. ¶¶47-48. ¶¶50-51 ¶¶53-58. And propose a motion dismissal. It is well established that "[c]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.[.]" *Dunn v. Castro*, 621 F.3d 1196, 1205 n.6 (quoting *Tellabs, Inc. v. Makor* Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)); *Magulta v. Samples*, 375 F.3d 1269, 1274-75 (11th Cir. 2004) (when reviewing a motion to dismiss for failure to state a claim, courts should read the complaint in its entirety); 5 Wright & Miller, Federal Practice and Procedure § 1286 (3d ed. 2004); 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).

The Plaintiff, Sharmarke Abdi contends that he has abundant sufficient facts in the Complaint to state claims for discrimination under the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the Civil Rights act of 1964 ("Title VII") alleging that 1). the County failed to provide reasonable accommodations in violation of the ADA; 2). After opposing the County's multiple denials, the County took adverse action and engaged in retaliations against Mr. Abdi in several times; and the County engaged in racial discrimination in violation of Title VII. The Plaintiff, Sharmarke Y. Abdi requests that the Defendant's Motion to Dismiss be denied in their entirety.

## FACTS

### A. Introduction

The County is unclear as to whether it is bringing a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(6) or 12(b)(1). In its Memorandum of Law in Support of the Motion to Dismiss, the County alleges new defenses that Mr. Abdi failed to exhaust administrative remedies.

The Equal Employment Opportunity Commission ("EEOC") charge attached to Mr. Abdi's Complaint was signed on August 2, 2021. The charge states that the time period of 03-01-2020 to 07/30/2021. Under the time period, there is a box 'checked' **CONTINUING ACTION.** The checked box of Continuing Action covers from March 01, 2020, to continuation as long as the County continues to discriminate against Mr. Abdi on the grounds of initial charge such as failing to provide reasonable accommodation, retaliation, and racial discrimination. On July 21, 2022, Mr. Abdi spoke with an EEOC investigator who advised that Mr. Abdi does not require new charge filed under these grounds. On December 14, 2022, Mr. Abdi submitted written rebuttal to support his claim and included a paragraph statement of amending the charge to include the new discrimination occurring May 27, 2022 – December 14, 2023; within the EEOC amount of time to file a charge of discrimination of 180 calendar days.

Despite of start date as 03/01/2020 of the charge, the majority County's direct discrimination against Mr. Abdi occurred from March 2021 and within 180 days of EEOC filing deadline.

3

**B. Workplace allegations of Events Occurring Before Charge was Filed.**

Per EEOC Time limits for filing a charge of discrimination is 180 calendar days from the day the discrimination took place. The Complaint states that the county engaged workplace racial discrimination, denial reasonable accommodation, and retaliatory adverse actions against Mr. Abdi and all occurred within 180 calendar days from the date of the charge was signed.

According to Complaint, *Id.* at ¶8. Mr. Abdi introduced Hennepin County as local government agency. *Compl.* ¶9. As introductory, Mr. Abdi discussed that he has been working for the County since January 27. 2014. Mr. Abdi started as Human Services Representative, known as financial worker and later promoted as Human Services Representative Senior in 2017. *See Compl.* ¶10. Also, as introductory, Mr. Abdi shared that he has been exceptional worker without complaints until March 2021.

According to Complaint, *Id.* at ¶ 11. Mr. Abdi requested reasonable accommodation "stand up desk' to conduct his job duties remotely due to Covid-19 pandemic. Mr. Abdi patiently waited months. Standup desk is an equipment that Mr. Abdi has been receiving accommodation for all years with the County. Mr. Abdi does not believe delays in receiving reasonable accommodation constitutes discrimination. *See Compl.* ¶2. The county denied the reasonable accommodation and Mr. Abdi followed the ADA coordinator and direct supervisor for appeal process.

**AMERICAN WITH DISABILITIES ACT OF 1990 ("ADA")**

**The County failed to provide reasonable accommodations in violation of the ADA.**

4

On March 22, 2021, *Id.* at ¶13. Mr. Abdi reached out the County's ADA coordinator, to request appeal and provide necessary documentation if needed. The ADA coordinator, labelled the reasonable accommodation as 'convenience' & 'choice.'

**A protected activity includes opposing unlawful practice of discrimination.**

Mr. Abdi exercises his rights under the ADA and those actions are protected activities. *See Compl.* ¶14. On March 26, 2021, Mr. Abdi spoke with the ADA coordinator's direct supervisor, via telephone. In thirty-six minutes of telephone conversation, Mr. Abdi shared with the ADA coordinator's manager about the ADA Coordinator's fault language and the reasonable accommodation.

**The County took adverse employment action as retaliatory under Title VII**

The County retaliated against Mr. Abdi, *See.* at ¶15. The ADA Manager filed complaint against Mr. Abdi. *See Id.* at ¶ 21. On March 30, 2021, EPR review, Mr. Abdi found out the County placed negative retaliatory adverse actions against him, and the word "communication' improvement was written in thirteen times. The County supervisor acknowledged that it is related to the ADA coordinator communication. *Id.* at ¶22. Abdi. On April 1, 2021, the Human Resources office launched disciplinary investigation based on false allegations. Mr. Abdi's supervisor also placed communication improvements in his EPR that negatively and adversely impacting solely advocating reasonable accommodation under protected right.

**COUNTY ENGAGED IN RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964**

**The County treated Mr. Abdi unfavorable because he is of a certain race (black)**

According to the Complaint, *See Id.* at ¶18. On March 26, 2021, a white female employee alleged against Mr. Abdi that he provided false information. In prior, this white female employee had falsely accused of Mr. Abdi that he conducted the class training in Somali language. Knowing the risk of white woman accusing a black man, Mr. Abdi replied to the white female and vehemently denied all the allegations, provided facts, and offered support. *See id.* at ¶19. Mr. Abdi forwarded the white female employee's email to Mr. Abdi's direct supervisor. The county never acknowledged, acted, or considered about Mr. Abdi's concerns against the white female worker.

**The County treated the white female employee favorable because of her race.**

According to the Complaint, *Id.* at ¶20. Mr. Abdi learned from program manager that the white female went to the supervisor and shared that she felt heartbroken of Mr. Abdi's usage of legal words such as "denying its truth or allegation. Moreover, the white female employee's allegation was weighed and resulted in disciplinary investigation against Mr. Abdi. The County failed to have Mr. Abdi share his side of situation and considered the white female employee's allegations as factual truth.

**The County took adverse action against Mr. Abdi because of his race.**

According to the Complaint, *Id.* at ¶21. On March 30, 2021, EPR review, Mr. Abdi found out the County placed negative retaliatory adverse actions against him, and the word "communication' improvement was written in thirteen times. The County supervisor acknowledged that it is related to white female employee. *Id.* at ¶23. The County

supervisor did not weigh on Mr. Abdi's concerns but alleviated the white female employee

allegation to subjected him to disciplinary investigation, negative review, and forcibly

leaving the department and resulting in yearly $4000.00 income reduction. *Id.* at ¶27. On

August 2, 2021, Mr. Abdi attempted to remain his team and conducted in meeting with

senior human services area manager. The senior administrator failed to assist Mr. Abdi

concerns. After few minutes, Mr. Abdi signed the draft EEOC charge.

## C. Workplace allegations of Events Occurring After Abdi filed his EEOC Charge.

According to the Complaint, *Id.* at ¶29. On October 11, 2021, Mr. Abdi transferred

to different department, as result in $4000.00 income reduction. Mr. Abdi always wanted

to remain his position, *See Id.* at ¶26. Mr. Abdi shares that he wanted to have the white

female employee to recuse, because mentoring her that she might accuse him third time, so

experiencing trauma in under hostile department and bad face. Mr. Abdi had second

position in the County which used to pay him an overtime, effectively October 11, 2021,

Mr. Abdi experienced in $4000 income reduction per year by losing overtime and

constitutes as adverse action against him.

Despite Adverse income reduction of $4000.00 a year, Mr. Abdi agrees he had quite

eight months. According to the Complaint, *Id.* at ¶30. On March 9, 2022, Mr. Abdi

participated in six months onboarding process, and Minnesota Department of Human

Services ("MN DHS") issued him MnChoice certified annual assessor. Mr. Abdi passed

Probation period, and. *Id.* at ¶31. As bilingual staff, Mr. Abdi was asset to the team, and he

was assessing eight Somali cases in some months. The County claimed that Mr. Abdi's

new supervisor learned that Mr. Abdi uses a wheelchair. The County falsely claims that Mr. Abdi is not physically able to do all of the essential duties.

## AMERICAN WITH DISABILITIES ACT OF 1990 ("ADA")

### The County failed to provide reasonable accommodations in violation of the ADA.

According to the Complaint, *Id.* at ¶36. On May 27, 2022, the County program manager informed to Mr. Abdi that he is no longer qualified as annual assessor, because Mr. Abdi uses wheelchair and physical disabled. *Id.* at ¶37. Mr. Abdi opposed the County's involuntary transfer and requested reasonable accommodation. The department receives 1500 annual assessment cases from Minnesota DHS. Approximately, 40% of those cases are individuals with disability. This department had around 120 staff to share the 1500 monthly cases. Each MnChoice Certified assessors, including Mr. Abdi receives 12 cases per month. So, it is reasonable for the County to allocate 12 cases per months out of the 1500 monthly cases to assign to Mr. Abdi. *Id.* at ¶38. July 21, 2022, Mr. Abdi request reasonable accommodation. Mr. Abdi also notified to EEOC that the new discrimination. The investigator shared that the same charge would cover it.

### The County took adverse employment action as retaliatory under Title VII

Mr. Abdi exercises his rights under the ADA and those actions are protected activities by requesting reasonable accommodation. *Id.* at ¶39. On July 22, 2022, the County retaliated against Mr. Abdi for requesting reasonable accommodation. The County alleged that Mr. Abdi is not doing his job and scheduled disciplinary investigation. The ADA prohibit an employer from taking an adverse action against an employee because of

the employee's disability. 42 U.S.C. 12112 and 42 U.S.C. 12203(a). *Id.* at ¶40. On July 28,

2022, the County denied Mr. Abdi's reasonable accommodation and to continue

processing the involuntary transfer. *Id.* at ¶41. Mr. Abdi appealed the accommodation

denial decision to the County's assistant commissioners. *Id.* at ¶42. On August 12, 2023,

the County's assistant commissioner denied Mr. Abdi's appeal to remain the team. At the

present time, *Id.* at ¶43. Mr. Abdi's emotion, mental health state, and hopes were all

damaged and squashed. As result, Mr. Abdi continues to be experiencing trauma and parts

of his body shaking after discussing these matters. On August 29, 2022, Mr. Abdi was

transferred to 911 Dispatch office as Senior Social Worker.

## AMERICAN WITH DISABILITIES ACT OF 1990 ("ADA")

### The County failed to provide reasonable accommodations in violation of the ADA.

According to the Complaint, *See Id.* at ¶47. On October 5, 2022, Mr. Abdi

requested reasonable accommodation to have his work shift hours switched in between

7:00 A.M. to 6:00 P.M. during the snow months for outdoor parking. Mr. Abdi also

provided medical doctor letter to support for his request. *Id.* at ¶48. The County denied

Mr. Abdi's reasonable accommodation and continued him working from 2:00 P.M. to

10:30 P.M.

### The County took adverse action against Mr. Abdi because of his race & disability.

The morning was a vacant, Mr. Abdi applied competitively. The County did not

invite Mr. Abdi to interview. *Id.* at ¶49. The County hired a white female social work in

the morning shift in which is violation union's seniority and protected right choosing a

white able-bodied woman over black disabled male. *See Id.* at ¶¶50-52. The County

allowed other staff switch departments per union contract, but Mr. Abdi was subjected to

different treatments. The department had open morning shift became available.

*Id.* at ¶53. Mr. Abdi remained working at the night shift and he stayed work late 20-30

minutes unpaid time every night during the winter season for sergeants to clear snow on

the ground and windshields.

   *See Id.* at ¶55. The County's dispatch team accused parking improperly in order to

have space to wipe snow from Mr. Abdi's car windshield. Falsely accusations relating to

breaking microwave and powerchair speed. Nevertheless, *Id.* at ¶55. Mr. Abdi continued to

suffer emotionally and mentally, his self-esteem shuttered and with sleepless nights. This

trauma is left with Mr. Abdi physiological fear and shaking whenever this situation.

## D. Mr. Abdi's EEOC Discrimination Charge.

   On August 2, 2021, Mr. Abdi filed a charge of discrimination ("charge") with the

EEOC under the Americans with Disabilities Act of 1990 ("ADA") and Title VII of the

Civil Rights Act of 1964 Title VII. In making this charge, Mr. Abdi checked the boxes for

discrimination based on race, retaliation, and disability. The County must focus on the

Complaint in which consist of 58 paragraphs.

   On July 21, 2022, Mr. Abdi notified the EEOC investigator about the new

allegations. On December 14, 2022, Mr. Abdi amended the EEOC charge to include events

from May 2022 to the December 14, 2022, within 180 calendar days of filling requirement.

**STANDARD OF REVIEW**

To withstand a challenge under Rule 12(b)(6), "a complaint must set forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Bowman v. Iddon,* 848 F.3d 1034, 1039 (D.C. Cir. 2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). A court reviewing a motion to dismiss under Rule 12(b)(6) must "accept[ ] as true all of the factual allegations contained in the complaint and draw[ ] all inferences in favor of the nonmoving party." *Autor v. Pritzker,* 740 F.3d 176, 179 (D.C. Cir. 2014) (quotation marks omitted). Moreover, "[a] complaint survives a motion to dismiss even '[i]f there are two alternative explanations, one advanced by [the] defendant and the other advanced by [the] plaintiff, both of which are plausible.'" *Banneker Ventures, LLC v. Graham,* 798 F.3d 1119, 1129 (D.C. Cir. 2015) (quoting *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011) (first bracket added)). Even if the defendant believes that its version will "prove to be the true one . . . that does not relieve defendant [ ] of [its] obligation to respond to a complaint that states a plausible claim for relief, and to participate in discovery." *Id.*

Defendants' motion should be rejected as it is untimely and fails to comply with the requirements of Fed. R. Civ. P. 12(b). Nonetheless, if the Court elects to consider the motion as a motion for judgment on the pleadings, the Motion should be denied as the arguments Defendants' raise are meritless.

## **ARGUMENT**

I.    **The County failed to provide Mr. Abdi a reasonable accommodation under the ADA, Mr. Abdi exercised under a protected activity, and the County took adverse employment action as retaliatory under Title VII**

Because the County does not want to argue all the facts on the Mr. Abdi's

Complaint. The County cites "To establish a failure to accommodate claim, the plaintiff must take a facial showing that he has both an ADA disability and has suffered an adverse employment action." *See Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008). According to Mr. Abdi's Complaint, ¶2(B). Mr. Abdi shows that he is a person with a physical 'disability' as the term is defined in 42 U.S.C. 12102. In many instances, the County took adverse action against Mr. Abdi. According to the Compliant, on March 22, 2021, *Id.* at ¶13. Mr. Abdi reached out the County's ADA coordinator, to request the appeal process for initial reasonable accommodation, the ADA coordinator described the reasonable accommodation for persons with disability as 'convenience' & 'choice.'

Moreover, the County took adverse employment action against Mr. Abdi as retaliatory. *See Id.* at ¶14. On March 26, 2021, Mr. Abdi spoke with the ADA Coordinator's manager for thirty-six minutes to complain about the ADA coordinator's conducts and standup desk. Instead of assisting Mr. Abdi, *See Id.* At ¶15, the ADA manager filed complaint against Mr. Abdi in which resulted in disciplinary investigations, *See* at ¶15. "The general approach to Title VII suits set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973), and *Burdine,* 450 U.S. 253, 101 S.Ct. at 1093-94, also applies to retaliation claims under section 704(a). *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 385 (10th Cir. 1984). "The plaintiff must first set forth a prima facie case of retaliation by establishing (1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal

12

connection between such activity and the employer's adverse action."

Mr. Abdi satisfied the exhaustion of administrative remedies (EEOC). Mr. Abdi's attached charge shows, it was signed on August 2, 2021, applicable dates: 03/01/2020 to 7/30/2021. Under the dates, there is box checked on "***Continuing Action.***"

In May 2022, the County started to discriminate Mr. Abdi for being in wheelchair and denying the reasonable work accommodation and subjecting to retaliation, On July 21, 2022, Mr. Abdi spoke with EEOC investigator and notified the new incidents. Within 180 calendar days, On December 14, 2022, Mr. Abdi amended the charge to include the incidents from May 2022.

## II.    Mr. Abdi's ADA retaliation claims resulted in multiple adverse employment actions.

To establish unlawful retaliation under the ADA, a plaintiff must show that: (1) he engaged in a statutorily protected activity: (2) the employer took an adverse action against him: and (3) there was a causal connection between the adverse action and the protected activity. *See Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir.1999). According to the Complaint, *See* at ¶36. The County told Mr. Abdi that he is no longer qualifies Senior Social Worker Annual Assessor because See at ¶2(B). Mr. Abdi is physical disabled man, uses a wheelchair, *See* at ¶38. who engaged in prior protected and/or opposing discrimination based on Disability. Furthermore, See at ¶39. On July 21, 2022, Mr. Abdi requested reasonable accommodation. On July 22, 2022, *See* at ¶39. The County started retaliatory investigation against Mr. Abdi practicing in a protected right. This action

13

traumatized *See* at ¶43. Mr. Abdi suffered financially, mentally, physically, and emotionally.

Surprisingly, the County does not want the court to know the 'essential functions' that Mr. Abdi failed to do as MN DHS Mnchoice Certified Annual Assessor from his wheelchair. The County stated that Mr. Abdi's new supervisor learned that Mr. Abdi uses a wheelchair and his job required that he goes to the clients 'homes which were not always wheelchair accessible. In this statement, the County does not dispute Mr. Abdi's education, experiences, and his abilities to serve the residents of Hennepin County under 29 CFR § 1630.2(f), but Mr. Abdi's disability. In contrast, the County allowed five white able-bodied colleagues to remain Mnchoice Annual Assessors, while disqualifying Mr. Abdi under 29 CFR § 1630.2(m), 'qualified, employee with disability.' It is illegal under ADA the County to treat Mr. Abdi worse than his colleagues in similar situation because of his disability. Mr. Abdi acted as Senior Social Worker; obtained Master of Clinical Social Work from St. Thomas University; certified Mnchoice Annual Assessor; and possess exceptional social work experiences; also Mr. Abdi defines himself as a qualified employee with physical disability under 29 CFR § 1630.2(m). Under the ADA, "[a]n individual is qualified if he satisfies the requisite skill, experience, education, and other job-related requirements and 'can perform the essential job functions with or without reasonable accommodations.' *"Rehrs v. Iams Co.,* 486 F.3 353, 356 (8th Cir 2007) (quoting *Cravens v. Blue Cross & Blue Shield of Kansas City,* 214 F.3d 1011, 1015 (8th Ci.2000)). An employer bears the burden of showing a particular function is essential.

14

The County failed to provide reasonable accommodation to Mr. Abdi a qualified employee with physical disability, under 29 CFR § 1630.2(m) with one essential duty as reasonable accommodation 'allocating twelve clients' cases in homes with free barriers from wheelchair users in the first twelve months.' Any person would think this is reasonable accommodation request, because the County receives fifteen hundred annual cases from MN DHS in every month. Most of those client cases are individual with disabilities in whom some of them already residing in accessible homes. The County has approximately One hundred and twenty Mnchoice Annual Assessors, including Mr. Abdi who used to conduct the fifteen hundred annual cases. Mr. Abdi is only employee who uses a wheelchair and respectfully requested the reasonable accommodation, having the County to allocate only twelve cases as required monthly assessment. Under definition, 29 CFR § 1630.2(n) "The term essential functions mean the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position." Under section 29 CFR § 1630.2(n)(2)(ii), "The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or." *See* at *Duello v Buchann Cnty Bd of Supervisors* 628 F.3d 968, 973 (8th Cir.2010). The County is financially fit to allocate a twelve client cases who live in buildings that are free barriers, such as modern apartments with functioning elevators, nursing homes, senior citizens high rises, and individuals who choose to meet in accessible public settings. Mr. Abdi's request was 12 out of 1500 annual client cases,

15

0.8%.

Mr. Abdi has shown actionable adverse employment action. He also has pled sufficient facts necessary to make a showing of a causal connection between any alleged protected activity and an actionable adverse action. The County ignored the following forty-five of the Complaint's paragraphs: *See* at ¶8. ¶¶13-20. ¶¶23-24, ¶¶26-28. ¶¶30-43. ¶¶47-48. ¶¶50-51 ¶¶53-58. But proposes dismissal. Mr. Abdi has sufficiently pled the essential threshold elements of his claim, the Defendant's Motion to Dismiss should be denied.

## III.   Abdi's signed Complaint consisting of 58 paragraphs does not indicate 'Origin'.

The typed and signed Complaint that consist of 58 paragraphs does not state that 'origin', the court requires to submit one complaint. The Defendant must not confuse and solely oppose or answer the Plaintiff's Complaint paragraphs. Mr. Abdi is not bringing lawsuit basis on origin.

"An employee cannot bring a discrimination claim without first exhausting his or her administrative remedies." *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999). Mr. Abdi exhausted and timely filed 'charge of Discrimination" with the EEOC against the Hennepin County, *See* at ¶56, Therefore, any claims based on national origin is not part of this lawsuit.

## IV.   The County engaged in racial discrimination in violation of Title VII of Civil Right Act of 1964.

a) *The County treated Mr. Abdi unfavorable because he is of a certain race (black)*

The County failed to mention the *Id.* at ¶ 18.in which states a white female

employee falsely accused Mr. Abdi. Historically trauma, as a black male who was being accused by white woman twice, *See* at *Id.* at ¶ 19. Mr. Abdi respectfully responded to the white female employee and denied all allegations and its truth. Mr. Abdi notified to his and her supervisor.  The County never weighed on Mr. Abdi concerns.

   b)  *The County treated the white female employee favorable because of her race.*

   The County gave different treatment the white female employee by allowing her to share her side of the story and was emotionally and professionally supported, *See Id.* at ¶20.that she felt heartbroken because of Mr. Abdi's right to defend himself. Therefore, The County failed to allow Mr. Abdi's to be heard and supported as equal, black disabled employee.

   c)  *The County took adverse action against Mr. Abdi because of his race.*

The county launched a disciplinary investigation against Mr. Abdi about the false lies of the white female employee, *Id.* at ¶23. Mr. Abdi was treated as second class citizen and subjected to investigation and negative EPR review. As result, *See* at¶27. On August 2, 2021, Mr. Abdi left the department after every effort failed in order him to remain the team with income loss of $4000.00 a year. "Where a plaintiff demonstrates, or an agency determines, that a challenged policy overtly and expressly singles out a protected group for disparate treatment, "a plaintiff need not prove the malice or discriminatory animus of a defendant …." *Bangerter v. Orem City Corp*., 46 F.3d 1491, 1501 (10th Cir. 1995. The County discriminatory treated Mr. Abdi in multiple times and he was subjected to disciplinary investigations, he was denied shift transfers.

## CONCLUSION

For the above-stated reasons set forth in this Memorandum, the County's Motion to Dismiss be denied.


Sharmarke Y. Abdi
Pro Se

Dated: September 18, 2023            By: _Sharmarke Abd._____

Sharmarke Y. Abdi
6405 Eagle Lake Dr
Maple Grove, MN 55369
Telephone:(615) 573-2486
Sharmataxi@gmail.com

18